UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID HUERTA,<br><br>                        Plaintiffs,<br><br>v.<br><br>CHAD F. WOLF, Acting Secretary of Homeland Security,[1] et al.,<br><br>                        Defendants. | Case No. 18cv1640-MMA (LL)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Doc. No. 33] |

Plaintiff David Huerta is a Seized Property Specialist with United States Customs and Border Protection ("CBP"), Department of Homeland Security. He brings this action *pro se* pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16, which protects federal employees from discrimination based on race, color, religion, sex, or national origin. Plaintiff has filed a First Amended Complaint in which he alleges that his supervisor racially discriminated and retaliated against him. *See* Doc. No. 20. The government moves for summary judgment as to all claims. *See* Doc. No. 33. Plaintiff

---

[1] Chad F. Wolf is now the Acting Secretary of Homeland Security. Pursuant to Federal Rule of Civil Procedure 25(d), Acting Secretary Wolf is substituted for former Secretary Kirstjen Nielsen as the proper defendant in this suit.

1

opposes the motion. *See* Doc. No. 41. The government filed a reply brief in support of the motion. *See* Doc. No. 38. The Court took the matter under submission on the briefs pursuant to Civil Local Rule 7.1.d.1. *See* Doc. No. 40; Fed. R. Civ. P. 78(b). For the reasons set forth below, the Court **GRANTS** the government's motion for summary judgment.

## BACKGROUND

*1. Plaintiff's Allegations*[2]

Plaintiff self-identifies as a non-Hispanic Caucasian. Port Director Rosa Hernandez is Hispanic. Plaintiff alleges that Hernandez repeatedly discriminated against him in favor of other Hispanic employees. Plaintiff further alleges that Hernandez retaliated against him for filing complaints against her with the Equal Employment Opportunity Commission ("EEOC").

On May 1, 2014, Plaintiff alleges that he and a Hispanic co-worker, Enrique Gutierrez, argued. According to Plaintiff, Hernandez then reassigned Plaintiff to the Fines, Penalties, and Forfeiture Office ("FPF"), but did not reassign Gutierrez. Plaintiff alleges that the seven-day suspension he ultimately received for his part in the verbal altercation was based on a falsified statement submitted by Hernandez. Plaintiff alleges that Hernandez's actions were motivated by racial animus and in retaliation for an EEOC complaint Plaintiff filed against her December 2008.

In December 2015, Plaintiff claims that Hernandez recommended Gutierrez receive a discretionary performance award, but she did not recommend that Plaintiff receive an award. Plaintiff alleges that Hernandez's discrepant treatment was motivated by racial animus and in retaliation for the EEOC complaint Plaintiff filed against her in July 2014.

---

[2] This section provides a summary of Plaintiff's allegations, as set forth in the First Amended Complaint, and should not be construed as factual findings.

On February 25, 2016, Plaintiff alleges that he applied for a temporary duty assignment at the Port of Philadelphia, but Hernandez denied his request in retaliation for Plaintiff's previously filed complaints against her. Plaintiff further claims that Hernandez previously granted Hispanic employees' applications for temporary duty assignments and her denial of his request was retaliatory and motivated by racial animus.

*2. Undisputed Facts*[3]

Plaintiff and Gutierrez, who has since retired, did not get along and Plaintiff did not like Gutierrez. *See* Pl. Depo. at 52-52, Def. Ex. A., Doc. No. 33-2 at 17-18.[4] In September 2008, Plaintiff and Gutierrez engaged in a verbal altercation which led to disciplinary measures being taken against both men. Plaintiff believed Hernandez disciplined him more harshly than Gutierrez and filed an EEOC complaint against Hernandez alleging "retaliation/reprisal" on the basis of race. *See* Def. Ex. B, Doc. No. 33-2 at 52. Plaintiff ultimately entered into a settlement agreement with the government which resolved his complaint against Hernandez. *See* Def. Ex. C.

On May 1, 2014, Plaintiff and Gutierrez once again argued. As Plaintiff's fourth-level supervisor, Hernandez was not present and did not witness the incident. *See* Def. Ex. I. Marcia Gomez, an FPF officer under Hernandez's direct supervision, advised Hernandez of the altercation. *See id*. Hernandez directed Gomez to issue cease and

---

[3] This section provides a summary of the material facts of this case. Facts that are immaterial for purposes of resolving the current motion are not included in this recitation. The material facts are taken from the government's separate statement of undisputed facts, together with pertinent supporting exhibits and relevant deposition testimony submitted by the government. The Court notes that Plaintiff did not respond to the government's separate statement of undisputed facts and did not object to the government's evidence. Plaintiff did not submit his own separate statement of undisputed facts nor did he submit any evidence, documentary, testimonial, or otherwise, in support of his opposition to the motion for summary judgment. Moreover, neither Plaintiff's First Amended Complaint nor his opposition brief are submitted under penalty of perjury and therefore may not be used as an opposing affidavit under Federal Rule of Civil Procedure 56. *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995).

[4] All citations to electronically filed documents refer to the pagination assigned by the CM/ECF system unless otherwise indicated.

desist letters to both Plaintiff and Gutierrez; Gomez did so.  *See* Def. Exs. G, F. Hernandez also instructed Gomez to contact Labor and Employee Relations Specialist Mary Buenrostro "for further guidance as to potential discipline to include a referral to the Joint Intake Center."  *See* Def. Ex. I, Doc. No. 33-4 at 19.  Per Hernandez's direction, Gomez advised Plaintiff that he would be reassigned to the FPF department pending completion of an investigation into the incident and final assessment.  *See id*. at 20. According to Hernandez, she "elected to move [Plaintiff] in lieu of Mr. Gutierrez" because she "saw no reasonable way . . . to have both employees remain assigned to that location and not potentially violate their Cease and Desist Letters."  *See id*. at 20-21. Hernandez reassigned Plaintiff to the FPF department rather than Gutierrez based on concerns and CBP policies regarding Gutierrez working in the FPF department under his wife's chain of command.  *See id*. at 21.

On July 1, 2014, Plaintiff filed an EEOC complaint against Hernandez alleging "retaliation/reprisal" on the basis of race.  *See* Def. Ex. J., Doc. No. 33-4 at 27.  Plaintiff requested monetary damages, permission to return to his normal assignment, and Gutierrez's reassignment to a different work location.  *See id.* at 29.

CBP dispatched a factfinder to conduct an administrative inquiry into the May 1, 2014 incident.  *See* Def. Ex. D.  Several third-party witnesses provided sworn testimonials indicating that Plaintiff threatened Gutierrez with bodily harm.  *See id*.  On December 10, 2014, Acting Assistant Port Director Vona Rossilli issued written recommendations proposing that both Plaintiff and Gutierrez serve ten-day suspensions without pay.  *See* Def. Exs. E, F.  On May 19, 2015, Port Director of the San Ysidro Port of Entry Sidney Aki, the deciding official, ultimately determined a seven-day suspension was appropriate discipline for both men.[5]  *See* Def. Ex. K, L.

---

[5] Although immaterial, the Court notes that the parties intermittently refer to Plaintiff's suspension as a five-day suspension.  However, the record reflects that Director Aki issued a seven-day suspension, five of which were business days and therefore days for which Plaintiff did not receive pay.

On November 25, 2015, Plaintiff sought leave to amend his EEOC complaint against Hernandez. *See* Def. Ex. N. Plaintiff requested, *inter alia*, removal of the suspension from his record, reimbursement of the missed pay, and reassignment of Gutierrez to the FPF department. *See id.*

Meanwhile, "[a]t the end of 2015, the Branch Chief submitted nominations for an employee Superior Achievement Award, which were cash awards given to employees for notable performance. As he had in years prior, the Branch Chief nominated all Seized Property Specialists who had worked in the vault during the annual inventory that year. He did not nominate [Plaintiff], however, who was still on his detail in the Forfeitures Office during the annual inventory." Def. Ex. S, Doc. No. 33-5 at 35.

On February 25, 2016, Plaintiff filed a new EEOC complaint against Hernandez alleging retaliation for his previously filed complaints. *See* Def. Ex. O. Plaintiff also claimed that "Hernandez made sure I was not put in for [a Superior Achievement] award to punish me." *Id.*, Doc. No. 35-5 at 18.

In February 2016, Plaintiff requested a temporary duty ("TDY") assignment at the Port of Philadelphia, scheduled to begin on March 15, 2016. *See* Def Ex. P. Because she "had planned an unannounced inventory to occur during the period that the assignment would have occurred," Hernandez recommended that Plaintiff's request be denied. Def. Ex. S, Doc. No. 33-5 at 35. Pete Flores, the Director for Field Operations San Diego, received Plaintiff's request but did not forward the request based on the staffing needs at Plaintiff's permanent duty station. *See id.*, Doc. No. 33-5 at 21; *see also* Flores Decl., Def. Ex. P. The unannounced inventory occurred as planned and was in fact unannounced. *See* Def. Ex. S, Doc. No. 33-5 at 42.

On March 14, 2016, Plaintiff sought leave to amend his EEOC complaint against Hernandez, alleging that she denied his TDY request as retaliation for Plaintiff's previously filed complaints against her. *See* Def. Ex. R.

On May 30, 2017, an administrative judge issued a written ruling denying Plaintiff's request to amend his July 2014 EEOC complaint based on untimeliness,

finding in favor of CBP on Plaintiff's discrimination and retaliation claims, and dismissing Plaintiff's complaint. *See* Def. Ex. S.

## **LEGAL STANDARD**

"A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden of establishing the basis of its motion and of identifying the portions of the declarations, pleadings, and discovery that demonstrate absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is material if it could affect the outcome of the suit under applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Id.* at 248.

The party opposing summary judgment cannot "'rest upon the mere allegations or denials of [its] pleading' but must instead produce evidence that 'sets forth specific facts showing that there is a genuine issue for trial.'" *Estate of Tucker v. Interscope Records*, 515 F.3d 1019, 1030 (9th Cir.), cert. denied, 555 U.S. 827 (2008) (quoting Fed. R. Civ. P. 56(e)). However, as the Ninth Circuit recently reminded district courts, "it should not take much for plaintiff in a discrimination case to overcome a summary judgment motion." *Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 499 (9th Cir. 2015) (citations and internal quotation omitted); s*ee also Schechner v. KPIX-TV*, 686 F.3d 1018, 1022 (9th Cir. 2012) ("As a general matter, the plaintiff in an employment discrimination action need produce very little evidence in order to overcome an employer's motion for summary judgment.").

In cases where a party is self-represented, courts apply the general summary judgment standard, but construe the *pro se* litigant's pleadings liberally in his or her favor. *See Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987) ("The Supreme Court

has instructed federal courts to liberally construe the 'inartful pleading' of *pro se* litigants.") (citations omitted).

## DISCUSSION

Title VII is the exclusive remedy for claims of employment discrimination by federal employees. *See Brown v. General Servs. Admin.*, 425 U.S. 820, 829-35 (1976); *Taylor v. Geithner*, 703 F.3d 328, 333 (9th Cir. 2013). Title VII prohibits consideration of "race, color, religion, sex, or national origin in employment practices," thereby establishing protected classes. 42 U.S.C. § 2000e-2(m). Plaintiff's burden on summary judgment is "to establish a prima facie case and, once the employer articulate[s] a legitimate, nondiscriminatory reason for its actions, to raise a genuine factual issue as to whether the articulated reason was pretextual." *Sischo-Nownejad v. Merced Community College Dist.*, 934 F.2d 1104, 1110 (9th Cir. 1991).

Plaintiff claims he was discriminated against by Hernandez on the basis of race and retaliated against by Hernandez for filing EEOC complaints against her. According to Plaintiff, Hernandez is responsible for Plaintiff's temporary transfer to another department and seven-day suspension after the May 1, 2014 incident involving Gutierrez, as well as lost opportunities for a performance award and a TDY assignment.

The government moves for summary judgment in its favor, arguing that Plaintiff fails to establish a prima facie case of discrimination or retaliation based on any of Hernandez's actions. The government further contends that Hernandez had no part in most of the events at issue and to the extent she played an active decision-making role, she had legitimate reasons for those actions. The government further avers that Plaintiff fails to put forth any evidence to raise a genuine dispute as to whether Hernandez's reasons for her actions were in fact pretext for discrimination or retaliation.

//

A. Relevant Law[6]

Discrimination in the form of disparate treatment occurs when, predicated upon a particular trait, an employee receives treatment less favorable than other employees. *See Wood v. City of San Diego*, 678 F.3d 1075, 1081 (9th Cir. 2012). In pertinent part, Title VII's disparate treatment provision provides: "[A]n unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

"To establish a prima facie case, plaintiffs must offer evidence that gives rise to an inference of unlawful discrimination," which they may do with "circumstantial evidence by showing: (1) that they are members of a protected class; (2) that they were qualified for their positions and performing their jobs satisfactorily; (3) that they experienced adverse employment actions; and (4) that similarly situated individuals outside their protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151 at 1156 (9th Cir. 2010) (citations, internal quotation marks, and brackets omitted). The parties do not appear to dispute that Plaintiff belongs to a protected class and was qualified for his job. Accordingly, the Court's analysis below will focus on the third and fourth elements.

"Title VII's antiretaliation provision forbids employer actions that 'discriminate against' an employee (or job applicant) because he has 'opposed' a practice that Title VII forbids or has 'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548

---

[6] Plaintiff has not proffered any "direct evidence" of racial discrimination or retaliation, i.e., "evidence which, if believed, proves the fact" of discriminatory or retaliatory motive "without inference or presumption." *Vasquez v. County of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2004). Accordingly, Plaintiff's claims are governed by the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

U.S. 53, 59 (2006) (quoting 42 U.S.C. § 2000e-3). To support a prima facie claim of retaliation, Plaintiff must show "that (1) he engaged in a protected activity; (2) his employer subjected him to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action." *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000). The parties do not dispute that Plaintiff engaged in protected activity by filing EEOC complaints against Hernandez on several previous occasions. Accordingly, the Court's analysis will focus on the second and third elements.

If the elements of a prima facie case are met, "[t]he burden of production, but not persuasion, then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action. If the employer does so, the plaintiff must show that the articulated reason is pretextual 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Chuang v. Univ. of California Davis, Bd. of Trustees*, 225 F.3d 1115, 1123–24 (9th Cir. 2000) (internal citation omitted) (quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).

### B. Analysis

As discussed above, Plaintiff's discrimination and retaliation claims arise out of four discrete employment actions: the seven-day suspension and temporary assignment to the FPF department as a result of the May 1, 2014 incident involving Gutierrez, as well as the failure to receive a performance award in 2015 and the denial of his TDY request in 2016. The Court considers each action in turn.

#### i. *Seven-Day Suspension*

The government argues that Plaintiff fails to establish a prima facie case of discriminatory or retaliatory treatment by Hernandez based on the seven-day suspension he received as a result of the May 1, 2014 argument with Gutierrez. The government does not contest that the suspension qualifies as an adverse employment action but points out that Hernandez did not suspend Plaintiff – the ultimate decision was tasked to Port

Director Aki.  The government further points to the fact that Plaintiff did not receive less favorable treatment than Gutierrez – Aki suspended both men for seven days.  Plaintiff does not dispute either of these key facts.  Accordingly, he cannot establish a prima facie case of discrimination or retaliation by Hernandez.

Even if Plaintiff could establish a prima facie case of either discrimination or retaliation, the record is replete with evidence demonstrating that CBP had legitimate non-discriminatory, non-retaliatory reasons for suspending both Plaintiff and Gutierrez for their unprofessional behavior.  Moreover, Plaintiff proffers no evidence to suggest the reasons for the seven-day suspension were pretextual.

A plaintiff may demonstrate pretext by showing that the employer's proffered explanation is unworthy of credence because it is "internally inconsistent or otherwise not believable."  *Chuang,* 225 F.3d at 1127.  "When evidence of pretext is circumstantial, rather than direct," as in this case, "the plaintiff must produce 'specific' and 'substantial' facts to create a triable issue of pretext."  *Godwin v. Hunt Wesson, Inc*., 150 F.3d 1217, 1222 (9th Cir. 1998).  Plaintiff puts forth no evidence that the reasons for his suspension were pretextual.  As a general matter, Plaintiff testified during his deposition that he never had any personal interaction with Hernandez.  *See* Pl. Depo. at 55, Def. Ex. A, Doc. No. 33-2 at 18.  Plaintiff further testified that he believed Hernandez was biased against him "in particular," not Caucasians specifically, and Plaintiff admitted he has no evidence to suggest Hernandez is racist or biased against all non-Hispanic Caucasians.  *Id.* at 75, Doc. No. 33-2 at 23.  Simply put, Plaintiff produces no actual evidence, circumstantial or otherwise, that he was disciplined for the May 1, 2014 incident based on his race.  Plaintiff offers only bare allegations and speculation.  "[A] plaintiff's belief that a defendant acted from unlawful motive, without evidence supporting that belief, is no more than speculation or unfounded accusation about whether the defendant really did act from an unlawful motive."  *Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1028 (9th Cir. 2001).

Nor does Plaintiff demonstrate that Hernandez's actions were a pretext for

retaliation based on Plaintiff's previously filed EEOC complaints. As the Ninth Circuit has held, a months-long "lapse between protected activity and an adverse employment action is simply too long, by itself, to give rise to an inference of causation." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002). Here, Plaintiff's engagement in a protected activity occurred years prior to Plaintiff's seven-day suspension following the May 1, 2014 altercation with Gutierrez. And even if this period of time was somehow sufficient to infer causation, "timing alone," when "accompanied by evidence" of a plaintiff's behavior problems, and "coupled with a complete lack of evidence of retaliatory intent, is neither specific nor substantial circumstantial evidence." *Davenport v. Bd. of Trs. of the State Ctr. Cmty. College Dist.*, 654 F. Supp. 2d 1073, 1102 (E.D. Cal. 2009).

Accordingly, the government is entitled to summary judgment in so far as Plaintiff's claims arise out of his seven-day suspension following the May 1, 2014 verbal altercation with Gutierrez.

### ii. Temporary Assignment to FPF Department

Plaintiff claims that his transfer at Hernandez's direction to the FPF department following the May 1, 2014 incident was discriminatory and retaliatory. The government argues that Plaintiff fails to make a prima facie case of discrimination or retaliation by Hernandez based on his temporary assignment to the FPF department. The record clearly reflects that Gutierrez received different treatment – he was permitted to continue with his normal assignment during the course of the ensuing investigation – however, the government contends that Plaintiff's temporary assignment to the FPF department does not qualify as an adverse employment action.

In a Title VII retaliation case, "[a]n action is an adverse employment action if a reasonable employee would have found the action materially adverse, which means it might have dissuaded a reasonable worker from making or supporting a charge of discrimination," and in a Title VII discrimination case "[a]n action is an adverse employment action if it materially affects the terms, conditions, or privileges of

employment." Ninth Circuit Civil Jury Instructions, 10.10 & 10.11 (citing *Burlington No. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006), and *Chuang v. Univ. of Cal. Davis, Bd. of Trustees*, 225 F.3d 1115, 1126 (9th Cir. 2000)).

Plaintiff testified during his deposition that by virtue of the transfer he lost opportunities to earn overtime pay. *See, e.g.*, Pl. Depo. At 129-30, Doc. No. 33-2 at 37. Viewed in the light most favorable to Plaintiff, a reasonable jury could find that his reassignment constituted an adverse employment action. *See Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 847–48 (9th Cir. 2004) (holding that denial of opportunity to earn overtime pay can be an adverse employment action).

However, even assuming Plaintiff has established a prima facie case of discrimination or retaliation, the record amply supports the government's assertion that Hernandez directed that Plaintiff be temporarily reassigned to the FPF department for legitimate reasons, taking into consideration agency protocols and regulations, as well as the need to separate Plaintiff and Gutierrez due to the cease and desist letters. And, as set forth above, Plaintiff admits he has no evidence to support his speculation to the contrary or to create a genuine dispute regarding pretext for Hernandez's actions.

Accordingly, the government is entitled to summary judgment in so far as Plaintiff's claims arise out of his temporary assignment to the FPF department following the May 1, 2014 verbal altercation with Gutierrez.

### iii. 2015 Performance Award

Plaintiff also faults Hernandez for his failure to receive a performance award in 2015. Plaintiff alleges that because he was transferred to the FPF department at Hernandez's direction, he was unable to participate in the inventory process that would have made him eligible for such an award. The government argues that Plaintiff cannot establish a prima facie case of discrimination or retaliation by Hernandez because she did not take part in the nomination process, and in any event, the nominating authority had legitimate reasons for not putting Plaintiff's name forward for an award.

Plaintiff does not dispute the factual basis for those reasons nor does he offer any

evidence to suggest those reasons were a pretext for racial discrimination by Hernandez. Plaintiff speculated during his deposition that Hernandez "didn't want to see [him] get an award," but admitted under oath that he had no evidence that Hernandez directed the nominating official to omit Plaintiff from the nomination list for the award. Pl. Depo. at 80-81, Doc. No. 33-2 at 24-25.

There is no evidence in the record that Hernandez participated in the nomination process for the 2015 performance award. As such, Plaintiff cannot establish a prima facie case of discrimination or retaliation by Hernandez arising out of his failure to receive the award. Moreover, the government has offered evidence establishing a legitimate reason why Plaintiff did not receive an award that year – he did not perform the work for which the employees were awarded. Plaintiff's speculation regarding some behind-the-scenes involvement by Hernandez is insufficient to raise a genuine issue regarding pretext.

Accordingly, the government is entitled to summary judgment in its favor in so far as Plaintiff's claims arise out of his failure to receive a 2015 performance award.

### *iv. 2016 TDY Request*

Finally, Plaintiff claims that as a result of Hernandez's discriminatory and retaliatory actions he was denied an opportunity for a temporary duty assignment at the Port of Philadelphia in Spring 2016. Once again, Plaintiff cannot establish a prima facie case of either discrimination or retaliation by Hernandez. The evidence reflects that Hernandez did not make the ultimate decision to deny Plaintiff's 2016 TDY request. Plaintiff avers that Hernandez recommended his request be denied in order to discriminate and retaliate against him. Plaintiff offers no evidence to support this allegation. But even assuming its truth, the government has put forth evidence demonstrating that CBP had a legitimate reason for denying Plaintiff's TDY request. The TDY assignment conflicted with an unannounced scheduled special inventory, and Plaintiff was needed to assist. *See* Flores Decl. ¶ 9, Def. Ex. P., Doc. No. 33-5 at 21. And once again, Plaintiff has no evidence of pretext.

Accordingly, the government is entitled to summary judgment in so far as

Plaintiff's claims arise out of the denial of his request for a temporary duty assignment at the Port of Philadelphia in March 2016.

### C. Conclusion

Even if Plaintiff could establish a prima facie case of racial discrimination or retaliation by Hernandez as to any of the employment actions at issue in this case, the government has proffered evidence sufficient to demonstrate that those actions were based on legitimate non-discriminatory, non-retaliatory reasons. Plaintiff received a seven-day suspension following the May 1, 2014 incident involving Gutierrez because the agency's investigation established that both men engaged in unprofessional behavior in the work place. Plaintiff was temporarily reassigned to the FPF department to facilitate the cease and desist letters received by both himself and Gutierrez; transferring Gutierrez was not practical and arguably would have violated protocols because his wife was a supervisor in the FPF department. Plaintiff did not receive a 2015 performance award because he did not perform the relevant work that year. And Plaintiff's 2016 TDY request was denied because personnel were needed in San Diego to complete an unannounced scheduled inventory. Plaintiff fails to challenge the government's evidence or put forth any evidence to support a genuine dispute as to whether any of these reasons were a pretext for racial discrimination or retaliation for engaging in protected activity. Accordingly, the government is entitled to summary judgment in its favor on Plaintiff's discrimination and retaliation claims.

## CONCLUSION

Based on the foregoing, the Court **GRANTS** the government's motion for summary judgment in its entirety. The Court **DIRECTS** the Clerk of Court to enter judgment accordingly and terminate this action.

**IT IS SO ORDERED**.

DATED: August 17, 2020

HON. MICHAEL M. ANELLO
United States District Judge